# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

**UNITED STATES OF AMERICA**

v.  Case No. 1:18-cr-00243

**KIMBERLY ANN ADDAIR**

### DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Kimberly Ann Addair, by counsel, Assistant Federal Public Defender Lorena E. Litten, submits this memorandum for the Court's consideration at her upcoming sentencing hearing. The guideline range set forth in the Presentence Investigation Report ("PSR") recommends a term of imprisonment between 30 and 37 months. PSR ¶ 68. Ms. Addair submits that a sentence of five years' probation is sufficient, but not greater than necessary to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

I. **Presentence Report Objections**

   A. **Objection No. 1 (Paragraph 30)**

Ms. Addair objects to the application of the four-level enhancement for the number of firearms. Her statement to ATF agents indicated that she did not purchase all of the guns for Mr. Miller; that some of the guns were actually hers. Ms. Addair does concede that available evidence can establish that six of the firearms she purchased were later located in New Jersey. It is Ms. Addair's position, therefore, that a two-level enhancement for 3-7 firearms should be applied instead.

**B. Objection No. 2 (Paragraph 31)**

Ms. Addair now concedes that this enhancement is correctly applied by the probation officer pursuant to U.S.S.G. § 2K2.1(b)(5), and accordingly, withdraws her objection. However, Ms. Addair asks that the court consider not applying this enhancement as the base offense level and the enhancement for the number of firearms already account for the same conduct. The enhancement was applied because Ms. Addair disposed of more than one firearm to Jonathan Miller, a person who she knew was not permitted to possess a firearm. Base offense level 14 was applied as Ms. Addair was convicted under 18 U.S.C. §§ 922(d) and 922(a)(6). In order to be convicted under 18 U.S.C. § 922(d)(1), a defendant must have disposed of firearms to a convicted felon. Further, a four-level enhancement was applied for the number of firearms, and even if Ms. Addair's first objection is sustained, a two-level enhancement would apply. Therefore, the additional four-level enhancement for "trafficking" in firearms only adds additional levels of enhancement for conduct that is already accounted for and is essentially double counting.

## II. 18 U.S.C. § 3553(a) Factors for Consideration

Ms. Addair respectfully submits that, regardless of whether or not her objection to the PSR is sustained, the following factors warrant a noncustodial sentence.

**A. The nature and circumstances of the offense.**

Ms. Addair purchased a number of firearms during 2016 for her boyfriend at the time, Jonathan Miller, who was a felon and therefore prohibited from purchasing

or possessing firearms. PSR ¶ 13, 22. She lied on the ATF Form 4473 when she indicated she was purchasing these firearms for herself. PSR ¶ 22.

Although Ms. Addair concedes that the "trafficking" enhancement applies here, Ms. Addair was not really trafficking firearms in the way society normally thinks of trafficking. There is no evidence that she was receiving any money for the firearms, and while Mr. Miller eventually told her that he was going to sell them, she did not know that at the time she purchased the firearms. Mr. Miller manipulated Ms. Addair's love for him to convince her to engage in criminal conduct – something she had no history of previously and has not engaged in since. Had Mr. Miller not made his way into Ms. Addair's life, it is likely she never would have committed this offense, or any other criminal offense. Ms. Addair does not offer this as an excuse for her criminal behavior, but only as an explanation of her resort to breaking the law after more than forty years of faithful compliance.

### B. History and Characteristics of Ms. Addair.

The circumstances of this offense do not comport with the kind of person Kimberly Addair really is. Ms. Addair is a forty-six year old woman, living in Bluefield, and working at Pepsico in Wytheville, Virginia. PSR ¶¶ 47, 60. She has spent most of her life as a resident of Mercer County, West Virginia. PSR ¶ 53. She has seven children, four of whom still live at home with her. PSR ¶¶ 50-52. She also has four grandchildren. Despite having only a ninth grade education, she has always worked since she was sixteen years old. PSR ¶¶ 58-59. Ms. Addair has never been

3

convicted of a crime before this case, she has never been to jail, and she has no prior contact with the judicial system.

### 1. Ms. Addair has a history of abusive relationships with men that contributed to her conduct in this case.

Although she would describe her childhood as "good," Ms. Addair was exposed at an early age to unhealthy and unstable relationships due to her father's alcoholism. PSR ¶ 48. Ms. Addair's father, while drunk, would frequently engage in arguments and physical altercations with her mother. *Id*. Her father would ultimately stop drinking, but not until about four to five years prior to his death in 2009. *Id.*

In 2003, Ms. Addair married a man named Ernest Dean Addair, who also had a problem with alcohol. PSR ¶ 50. Ms. Addair recalled that her husband's drinking would remind her of her father. *Id*. When Mr. Addair drank, he would start verbal arguments with her that would sometimes become physical. *Id*. Once, he hit her in the jaw and she went to the hospital for treatment. *Id*. She did not tell anyone about the abuse she was experiencing because she was ashamed. *Id*. Instead, she told hospital staff that she had run into something. *Id*. The couple remained married for ten years before their divorce in 2013. Mr. Addair died from cancer the following year. *Id*.

Ms. Addair's relationship with Jonathan Miller, the man she purchased firearms for, was similarly unhealthy, although there was no physical abuse. Ms. Addair recalled that the first time Mr. Miller asked her to purchase a firearm for him,

she refused, and he became enraged. PSR ¶ 13. This was Ms. Addair's first relationship after her divorce from and subsequent death of her former husband, Mr. Addair. Not wanting to argue and fight with the man she loved, she eventually gave in to his manipulation and agreed to purchase firearms for him, doing so on more than one occasion. PSR ¶ 13.

### 2. This will be Ms. Addair's first-ever conviction.

The sentencing guidelines do not fully account for Kimberly Addair's lack of criminal history. Ms. Addair has no criminal history points; however, a criminal history score of zero does not necessarily mean an offender had no prior criminal history. According to the United States Sentencing Commission ("USSC"), almost one in ten offenders (9.8%) in fiscal year 2016 had a criminal history score of zero but had at least one prior conviction. *See* Tracey Kyckelhahn & Emily Herbst, U.S. Sentencing Comm'n, *The Criminal History of Federal Offenders* at 2 (2018).[1]

A study by the USSC demonstrates that even within criminal history category I, there are discernable differences in recidivism rates between offenders based on whether they had prior convictions or contact with law enforcement. The study concluded that offenders with zero criminal history points have a lower recidivism rate than offenders with one criminal history point, and that offenders with zero criminal history points and no prior contact with the criminal justice system have an even lower recidivism rate. *See* Tracey Kyckelhahn & Trishia Cooper, U.S.

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180517_criminal-history.pdf.

5

Sentencing Comm'n, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* at 6–9 (2017).[2]

### 3. Since the commission of this offense, Ms. Addair has lived a productive, law-abiding life.

Ms. Addair has not so much as gotten a speeding ticket since the commission of this offense, which occurred over two years ago. PSR ¶¶ 40-43. She has worked consistently, with her only break in employment being due to her being arrested at work, which led to her being fired from her job. PSR ¶¶ 59-63. Since she has been on bond, there have been no allegations of any bond violations and by all accounts, she has been completely compliant with the terms of her bond supervision. Her bond compliance is a predictor of Ms. Addair's future success while on supervision and weighs in favor of her receiving a noncustodial sentence.

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence and Protect the Public.

A sentence of five years' probation is more than adequate to provide deterrence and to protect the public. Empirical evidence does not favor longer sentences over shorter ones to achieve deterrence. *See, e.g.*, Michael Tonry, *Purposes and Functions of Sentencing*, Crime and Justice: A Review of Research 28-29 (2006) ("[E]very major survey of the evidence" has concluded that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."). Studies show that severe punishments for crime are ineffective at deterring others from similar conduct, partly

---

[2] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.

because criminals know little about the sanctions for specific crimes. More severe punishments do not "chasten" individuals convicted of crimes, and prisons may exacerbate recidivism. *See* National Institute of Justice, *Five Things About Deterrence*.[3]

This Court should also consider that Ms. Addair's age (46) alone makes her less likely to reoffend. According to the Sentencing Commission's recent report, "[a]ge exert[s] a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of the sentence imposed." U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (Dec 7, 2017).[4] Furthermore, the study found that while individuals under twenty-one at the time of release from custody are the most likely to be rearrested (67.6%), the rate of rearrest declines in each subsequent age group. *Id.* at 22-23. Individuals who are between ages forty-five and forty-nine at the time of their release are much less likely to be rearrested – 38.8%. *Id.* at 23.

---

[3] *Available at* https://www.ncjrs.gov/pdffiles1/nij/247350.pdf.
[4] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

**D. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment.**

A sentence of five years' probation is a sufficient punishment for Ms. Addair in light of her lack of criminal history and personal characteristics. This sentence would serve as a just penalty for his criminal conduct in this case.

**1. Locking Kimberly Addair up in prison will not benefit the community as she does not present a danger to the public.**

There is nothing positive to be gained by sentencing Ms. Addair to prison, either for Ms. Addair herself, or for the community. Ms. Addair has shown that she can be compliant with supervision and has been a law-abiding citizen for the last <u>two years and six months</u>. Furthermore, Ms. Addair has the ability and motivation to make amends for her transgressions by participating in community service which this Court can and should order as a probation requirement.

**2. Probation is sufficient to deter any future criminal conduct on the part of Kimberly Addair.**

As stated above, Ms. Addair has made every effort to conform her behavior to the law since the completion of the instant offense. Her behavior during this time has been nothing short of exceptional, despite the uncertainty of her current situation and the anxiety and stress she most certainly feels. She has never been to prison before and is absolutely terrified at the prospect of being sent there. The possibility and fear of going to prison is enough to deter her from engaging in any future criminal conduct. It has been an effective deterrent since the end of 2016, and there is no reason to believe that will change.

### 3. Kimberly Addair has already been punished by being charged and convicted of a felony drug offense.

Ms. Addair's punishment began the day she was arrested for this offense. She was devastated to have let down her family. She is deeply ashamed of her criminal conduct, and it has already cost her a job at Rural King. PSR ¶ 63. Having this case hanging over her head, like a dark storm cloud, for over two years has been tremendously stressful. Furthermore, Ms. Addair will live the rest of her life with the black stain of a felony conviction on her background. This conviction alone will have drastic effects on her future. She will not be able to vote, hold public office, or serve on a jury. She will have to report this conviction on most future job applications. She will likely face difficulty gaining future employment. As the Court is aware, this mistake will follow her for the rest of her life, no matter how hard she works to overcome it.

### III. Conclusion

For the reasons stated above, the requested sentence of five years' probation is a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted this 28th day of June, 2019.

**KIMBERLY ADDAIR**

By Counsel

**BRIAN J. KORNBRATH**
**ACTING FEDERAL PUBLIC DEFENDER**

**s/ Lorena E. Litten**
Lorena E. Litten, Bar No. 12226
Assistant Federal Public Defender
United States Courthouse
300 Virginia Street, East, Room 3400
Charleston, WV 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: lorena_litten@fd.org